IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ORTEGA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**CORNERSTONE AUTO PROTECTION INC. and CALL HANDLES, LLC,**<br><br>*Defendants,* | Case No. 5:24-cv-573<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff, Mark Ortega ("Plaintiff" or "Ortega") brings this Class Action Complaint and Demand for Jury Trial against Defendant Cornerstone Auto Protection Inc. ("Defendant Cornerstone" or "Cornerstone") and Defendant Call Handles, LLC ("Defendant Call Handles" or "Call Handles") (collectively "Defendants") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC").

Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**I.    PARTIES**

1. Plaintiff is a resident of San Antonio, Texas.

2. Defendant Cornerstone is a California corporation.

Complaint - 1

3. Defendant Call Handles is a California limited liability company.

## II.     JURISDICTION AND VENUE

4. <u>Jurisdiction.</u> This Court has federal question subject matter jurisdiction over this action under 28 U.S.C §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court also has supplemental jurisdiction because the Texas Telephone Solicitation Act ("TTSA") claim relates to the same telemarketing campaign as the TCPA.

5. <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over the Defendants because the Defendants transact business in this District and place calls to consumers into this District.

6. <u>Venue.</u> Venue is proper in this District under 28 U.S.C § 1391(b) because the Plaintiff resides in this District and the wrongful conduct giving rise to this case was directed into this District.

## III.     INTRODUCTION

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

8. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA provides a private right of action against any entity that makes calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B) or "on whose behalf" such calls are made. *See* 47 U.S.C. § 227(b)(3).

10. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It specifically ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messaged by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

11. Moreover, Texas law, under section 302.101 of the Texas Business & Commerce Code, prohibits sellers from engaging in telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller obtains a registration certificate from the Office of the Secretary of State.

12. Section 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees.

### IV.   FACTUAL ALLEGATIONS

13. Cornerstone sells vehicle protection plans.

14. To generate business through sales, Cornerstone relies on telemarketing by third parties, such as Call Handles.

15. Plaintiff is an individual who was in Texas at the time of the calls.

16. Plaintiff is the subscriber and the sole user of the cellular phone number (210)-744-XXXX.

17. Plaintiff registered his phone number on the Do Not Call Registry more than 30 days prior to receiving the calls at issue.

18. Plaintiff uses his cell phone primarily for personal, residential, and household purposes.

19. Plaintiff never consented to receive telemarketing communications from Defendants.

20. Upon information and belief, Call Handles placed telemarketing calls to Plaintiff's number on February 28, 2024.

21. When Plaintiff answered the call, there was a distinct pause and delay before anyone answered.

22. This type of computer dialing demonstrates that the dialing system at issue has present capacity to generate random sequential or sequential numbers, since the dialer is not ready to have the call recipient talk to someone while it is stopping its output of generation of numbers.

23. Upon information and belief, Call Handles, on behalf of Cornerstone, transmitted a non-working number for a Caller ID.

24. Cornerstone was not identified either through Caller ID or at the start of the telemarketing call, thus the Plaintiff went through the telemarketing process so he could identify the company.

25. During the call, a customer representative from Call Handles spoke with Plaintiff and asked a few questions about auto protection. The call was then transferred to Cornerstone.

26. At the time of the calls, Defendants did not have a registration certificate from the Office of the Secretary of State of Texas.

27. On or about February 28, 2024, Plaintiff's attorney sent a letter to Defendants stating that Plaintiff is registered in the National Do Not Call Registry, did not consent to receiving communications from Defendant, and demanding damages. The emails went unanswered.

28. The unauthorized telephonic communications that Plaintiff received from Defendants, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone.

29. Seeking redress for these injuries, Plaintiff, on behalf of himself and Classes of similarly situated individuals, bring suit under the TCPA.

### Cornerstone's Liability for Call Handle's Conduct

30. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

31. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 ¶ 1 (2013) ("May 2013 FCC Ruling").

32. The Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers

Complaint - 5

> in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, … suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

33. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* At 6586, ¶ 34.

34. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

35. Cornerstone hired Call Handles to originate new business using telemarketing calls.

36. Cornerstone accepted the benefits of Call Handles' illegal telemarketing by taking live transfers of leads directly from Call Handles.

37. Cornerstone failed to take effective steps within its power to force Call Handles to cease calling consumers that were registered in the Do Not Call Registry.

38. By having Call Handles initiate the calls on its behalf to generate new business, Cornerstone "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

39. Moreover, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships --which consumers may acquire through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## V. CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure § 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **TCPA 227(b) Class:** Since February 28, 2020, through the date of certification, Plaintiff and all persons within the United States to whose cellular telephone number Defendants placed (or had placed on its behalf) a pre-recorded or artificial voice telemarketing call.
>
> **Texas § 302.101 Class:** Since February 28, 2020, through the date of certification, Plaintiff and all residents of the State of Texas to whose telephone number Defendants placed (or had placed on their behalf) telephone solicitations when Defendants did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.

41. Defendants and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

42. Plaintiff brings all claims in this action individual and on behalf of Class Members against Defendants.

### Numerosity

43. Members of the Class are so numerous that their individual joinder is impracticable.

44. On information and belief, based on the practices and technology used to call and message Plaintiff, Members of the Class number in the thousands.

45. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

46. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

### Commonality

47. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individuals Class Members.

48. Common legal and factual questions, include, but are not limited to, whether Defendants has violated the Telephone Consumer Protection Act or Texas Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

49. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them his consent to receive such calls.

### Adequacy of Representation

50. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel, and he intends to prosecute this action vigorously.

51. The interest of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority

52. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

53. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendants' liability.

54. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

55. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

56. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

57. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. 227(b))**
**(On Behalf of Plaintiff and the TCPA 227(b) Class)**

58. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 57 of this Complaint and incorporates them by reference herein.

59. The TCPA's implementing regulation, 47 USC § 227(b), provides that [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States … to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)." § 227(b)(B).

60. TCPA grants a private right of action to individuals based on a violation of § 227(b) or the regulations prescribed under § 227(b). 47 U.S.C § 227(b)(3). Even one instance of a violation of 227(b) is actionable in the Fifth Circuit. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689-91 (5th Cir. 2021).

61. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(b)(3), are entitled, inter alia, to receive up to $500 in damages for such violation.

62. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CAUSE OF ACTION**
**Violation of Texas Regulation of Telephone Solicitation**
**Tex. Bus. & Com. Code Ann. § 302**
**(On Behalf of Plaintiff and the Texas § 302.101 Class)**

63. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

64. Section 302.101(a) of Texas Business and Commerce Code requires sellers that makes a telephone solicitation from a location in Texas or to a purchaser located in Texas to hold "a registration certificate for the business location from which the telephone solicitation is made." Moreover, the Code requires a "separate registration certificate for each business location from which a telephone solicitation is made." *See id* (b).

65. In violation of the Code, Defendants made telephonic solicitations to Plaintiff and Class Members without having a registration certificate for each business location at the time of the calls.

66. Section 302.303(b) creates a "private right or remedy … to enforce this chapter."

67. As a result of Defendants' conduct as alleged herein, and pursuant to § 302.302(a) of Tex. Bus. & Com. Code, Plaintiff and Class members were harmed and are each entitled to a maximum of $5,000.00 in damages for each violation.

68. Under § 302.302(d), Plaintiff is entitled to "recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) Certification of the proposed Classes;

b) Appointment of Plaintiff as representative of the Classes;

c) Appointment of the undersigned counsel as counsel for the Classes;

d) An order declaring that Defendant's action, as set out above, violate the TCPA;

e) An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

f) An award of statutory damages;

g) An award of treble damages;

h) An award of reasonable attorneys' fees and costs; and

i) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

    Respectfully Submitted,

    **MARK ORTEGA**, individually and on behalf of all others similarly situated,

DATED this 27th day of May 2024.

    By:

    **ALMANZA TERRAZAS PLLC**

13423 Blanco Rd, PMB 8098
San Antonio, Texas 78216
Telephone: 512-900-9248
Email: paulina@almanza.legal

<u>/s/ **Paulina Almanza**</u>
Paulina Almanza
State Bar No. 24109580
Attorney for Plaintiff Mark Ortega

## Certificate of Service

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system in compliance with the Local Rules.

By: <u>*/s/ Paulina Almanza*</u>
Paulina Almanza